Filed 3/4/22  P. v. Hernandez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ERNIE JAMES HERNANDEZ, Defendant and Appellant. | F080421 (Super. Ct. No. DF013887A) **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Ernie James Hernandez was convicted by plea of possessing a controlled substance in a state prison.  He obtained a certificate of probable cause to challenge the

trial court's denial of a discovery motion. We conclude the motion was appropriately denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Hernandez is an inmate at Kern Valley State Prison. He is apparently serving an indeterminate life sentence based on convictions in 1992 of attempted murder and discharging a firearm at an occupied vehicle.

On March 15, 2018, prison guards found Hernandez in possession of 0.42 grams of heroin. The record contains multiple Form CDC-837 incident reports documenting the offense. One report includes these statements: "Inmate Hernandez will receive a Rules Violation Report (RVR) for violating CCR 3016(a) specifically; Possession of a Controlled Substance in an Institution, a Division B Offense, At which time, an RVR for the violation will be submitted, a copy placed within the Crime/Incident package and the above mentioned will be updated via amendment. In addition, this matter may be referred to the Kern County District Attorney's Office for possible felony prosecution."

In November 2018, the Kern County District Attorney filed a criminal complaint regarding the heroin possession. In May 2019, following a preliminary hearing, Hernandez was charged by information with possession of a controlled substance in a state prison (Pen. Code, § 4573.6). He was further alleged to have suffered two prior strikes (see *id*., §§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)), i.e., the 1992 convictions noted above.

Hernandez pleaded not guilty and made a routine discovery request pursuant to Penal Code section 1054.1. His appointed counsel later filed what is commonly known as a *Pitchess* motion. (See Evid. Code, §§ 1043, 1045; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.) In June 2019, the trial court conducted an in camera review of the involved prison guards' personnel files and determined they contained no discoverable information. The *Pitchess* ruling is not at issue in this appeal.

2.

In October 2019, defense counsel filed a document styled as a "MOTION TO DISMISS ON EQUAL PROTECTION GROUNDS [AND] MOTION TO COMPEL DISCOVERY." The motion papers contained the following allegations: "Mr. Hernandez's rules violation was never referred to a 115 hearing, and he never suffered any consequences of a 115 Rules Violation. Sometimes inmates have a pending 115 hearing, and they choose to delay that hearing until the termination of any DA filing. Here, none was filed within the proper time frame, and as such it is now too late for a 115 to be filed or heard. The case nonetheless was referred to the District Attorney's Office, which chose to file this matter in this court."[1]

The motion papers cited California Code of Regulations, title 15, section 3316, which is entitled "Referral for Criminal Prosecution." Under subdivision (a) of this regulation, all criminal behavior by prisoners "shall be referred by the institution head or designee to appropriate authorities for possible investigation and prosecution when there is evidence substantiating each of the elements of the crime to be charged." Subdivision (b) of the regulation is an exception to the mandatory language of subdivision (a). The exception states that "criminal misconduct shall not be referred to the local district attorney if the local district attorney has submitted written notification to

---

[1] Inmate discipline is governed by title 15 of the California Code of Regulations. When prisoner misconduct "is believed to be a violation of law or is not minor in nature, it shall be reported on a Rules Violation Report." (Cal. Code Regs., tit. 15, § 3312, subd. (a)(3).) Such reports are colloquially known as "115s," referring to a standardized form (Form CDC-115) used by the California Department of Corrections and Rehabilitation. (See *In re Reed* (2009) 171 Cal.App.4th 1071, 1077 ["A CDC 115 documents misconduct that is 'believed to be a violation of law or is not minor in nature.' "].) Once completed, the 115 is reviewed and the matter is classified as either "administrative" or "serious" pursuant to criteria set forth in the Code of Regulations. (Cal. Code Regs., tit. 15, § 3313, subd. (a).) Administrative violations are resolved at a disciplinary hearing. (*Id.*, § 3314, subd. (b).) Serious violations subject the inmate to both a disciplinary hearing and, if the violation is a criminal offense, referral for prosecution. (*Id.*, § 3315, subd. (b).) Felonious conduct automatically qualifies as a "serious disciplinary offense." (*Id.*, subd. (a)(1).)

3.

the institution head including criteria determining that specified crimes shall not be prosecuted if the crime involved meets such criteria." (Cal. Code Regs., tit. 15, § 3316, subd. (b).)

In his motion, Hernandez claimed to have "reason to believe that a memorandum of understanding (MOU) exists between the District Attorney's Office and Kern Valley State Prison." He further alleged:

> "The defense made a request of the Deputy District Attorney on October 15, 2019, as well as on previous occasions in other matters. It is unknown, without seeing the MOU, whether the Kern County District Attorney's Office takes filings from 115s, or from some other mechanism. The mechanism for referral is relevant to the question of whether filing the case as a felony violates Mr. Hernandez's rights. The issue for the defense is this: if the District Attorney's understanding with the prison is that the District Attorney's Office files cases from 115 referrals, then the fact that Mr. Hernandez never had a 115 also means this matter should never have been referred to the District Attorney's Office for prosecution."

The motion was supported by an attorney declaration made on "information and belief." The declaration contained two substantive assertions: (1) "The defense requested the MOU and any paperwork supporting the filing of this incident as a 115" and (2) "I believe that such MOU exists and that it is, or may be, applicable to Mr. Hernandez's case."

Based on the assumed existence of supporting evidence in the MOU, it was argued that "[a] similarly situated inmate would never have had a matter referred to the District Attorney's Office, because the District Attorney's MOU would not have included cases which occurred outside the 115 process." According to the defense, "If Mr. Hernandez's case falls outside of the MOU, then the matter should be dismissed outright on jurisdictional and equal protection grounds." The motion concluded by stating, "If the District Attorney is unwilling to disclose the MOU, then in the alternative the defense requests an *in camera* hearing, where the MOU can be filed under seal with the court.

In unverified opposition papers, the prosecutor confirmed that an MOU "does exist between the Kern County District Attorney's Office and California Department of Corrections and Rehabilitation." However, "It is not the policy or practice of [the district attorney's] office to release the MOU in regards to discovery requests. Furthermore, it is not required under [*Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*)] or Penal Code [section] 1054 that this MOU be disclosed to the defense."

The opposition brief also stated, "[T]he Defense is incorrect in its belief that the District Attorney's Office files cases from 115 referrals. The discretion of whether to prosecute a case for criminal charges is left to the District Attorney's Office after taking into account all circumstances of the offense." Citing the Crime Victims Justice Reform Act of 1990 (Proposition 115), the prosecutor further argued the MOU was outside the scope of any required discovery. In the alternative, the prosecutor agreed that "an *in camera* hearing should be conducted where the MOU can be filed under seal with the court."

The motion was heard on October 24, 2019. Defense counsel argued, "I'm informed and believe that there is an MOU, memorandum of understanding, between the District Attorney's office and each individual facility at CDCR. Mr. Hernandez never had a 115 for the conduct alleged in this case." The argument continued:

> "So my position is—so I don't know what's in the MOU. My position is that if the MOU says we're only going to take cases that come through a 115 process, and nonetheless Mr. Hernandez's case was filed, that he has an equal protection argument that similarly situated inmates did not have cases filed by the D.A.'s office, but his was. [¶] … [¶] … I don't know exactly what is in the MOU, though, so I'm making a contingent argument. So what I would ask is if I don't get the MOU directly, if the Court could review it in camera and then use that to determine if I'm entitled to see it or if there's a basis for the motion based on what's in the MOU."

5.

The prosecutor submitted on the written opposition, adding, "I don't think it's relevant." Immediately thereafter, the judge said, "I'm going to deny the motion, deny the request." No further explanation was provided.

On November 7, 2019, Hernandez accepted a plea bargain. He pleaded no contest to the drug possession charge in exchange for an indicated sentence of six years, i.e., the middle term doubled because of an admitted prior strike, and the granting of a defense motion to dismiss the second strike allegation. The possibility of an appeal was not discussed on the record, but a timely notice of appeal was filed one month later.

Hernandez's request for a certificate of probable cause, which was summarily granted, contained the following statement:

> "A Motion to Dismiss on Equal Protection Grounds and a Motion for Discovery were both denied. Counsel believes there is a MOU— Memorandum of Understanding between the prison and the District Attorney's Office, where the DA specifies the cases that the office will accept from the prison. This MOU was requested but its disclosure was not granted. The case at hand involves a matter that never went through an in-prison disciplinary hearing under 115. If the MOU specifies that the DA will accept cases that have gone through 115 proceedings, but not others, then this case falls outside the MOU and should be dismissed on equal protection grounds. The motion for discovery and the motion to dismiss were both denied before the plea was entered. They should have been granted."

## DISCUSSION

The question presented is whether Hernandez carried his burden as the moving party on the discovery motion. The relief sought is a remand to the trial court "with orders to review the MOU *in camera* and disclose any material information to the defense." Both Hernandez and the People characterize the dispute as a *Brady* issue, which it is not.

"Pursuant to *Brady v. Maryland*, *supra*, 373 U.S. 83, ' "the prosecution must disclose material exculpatory evidence…." ' " (*People v. Beck and Cruz* (2019)

6.

8 Cal.5th 548, 668.) Whereas *Brady* concerns evidence regarding guilt or innocence (see *People v. Salazar* (2005) 35 Cal.4th 1031, 1043), a claim of discriminatory prosecution challenges the legality of the proceedings. "Although referred to for convenience as a 'defense,' a defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831 (*Baluyut*).)

Since the discovery at issue does not relate to guilt or innocence, Hernandez's reliance on *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 and *People v. Webb* (1993) 6 Cal.4th 494 is misplaced. Those cases discuss a trial court's duty in a discovery dispute to review assertedly privileged evidence to determine whether it is "material to guilt or punishment." (*Ritchie*, at p. 57.) "When the state seeks to protect such privileged items from disclosure, the court must examine them in camera to determine whether they are 'material' to guilt or innocence."[2] (*Webb*, at p. 518.)

The type of discovery request Hernandez made below is informally known as a *Murgia* motion. (See *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 (*Murgia*).) The *Murgia* case "held that when a defendant seeks to defend a criminal prosecution based on discriminatory prosecution, 'traditional principles of criminal discovery mandate that defendants be permitted to discover information relevant to such a claim.' " (*People v. Montes* (2014) 58 Cal.4th 809, 828 (*Montes*), quoting *Murgia*, at p. 306.)

"At the time of the *Murgia* decision, criminal discovery in California, unlike civil discovery, was 'strictly a judicial creation.' [Citation.] However, in 1990, Proposition

---

[2]     The irrelevance of *Ritchie* and *Webb* is further demonstrated by the fact the prosecution never claimed the MOU was a privileged document.

7.

115 was passed, and it included the Criminal Discovery Statute, [Penal Code] section 1054 et seq.  Section 1054, subdivision (e), states that 'no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States.' " (*Montes*, *supra*, 58 Cal.4th at p. 828.)  "Discovery related to a claim of discriminatory prosecution is not provided for in section 1054.1, which sets forth the prosecutor's discovery obligations, or in any other statute." (*Ibid.*)

In *United States v. Armstrong* (1996) 517 U.S. 456 (*Armstrong*), "the United States Supreme Court assumed discovery based on a defense of discriminatory prosecution was available to a criminal defendant defending against a federal charge in federal district court.  [Citation.]  The majority opinion held such discovery was not based on Federal Rules of Criminal Procedure … and left open the question of whether this discovery was constitutionally based or was based on a federal district court's inherent discovery powers." (*Montes*, *supra*, 58 Cal.4th at p. 829.)  In *People v. Superior Court* (*Baez*) (2000) 79 Cal.App.4th 1177 (*Baez*), the Sixth Appellate District relied on *Armstrong* in holding that "a *Murgia* discovery motion is constitutionally compelled discovery based on federal equal protection, and thus survives the passage of Proposition 115." (*Montes*, at p. 828, citing *Baez*, at p. 1188.)  The *Baez* court also held the standard of review for rulings on *Murgia* motions is abuse of discretion.  (*Baez*, at p. 1185.)

In *Montes*, which was decided nearly 14 years after *Baez*, the California Supreme Court considered a challenge to a trial court's denial of a *Murgia* motion.  The high court acknowledged the *Baez* decision before "assum[ing] for the sake of argument that [the] defendant's *Murgia* discovery motion was validly made." (*Montes*, *supra*, 58 Cal.4th at p. 829.)  It then "turn[ed] to the question of whether [the] defendant made the requisite showing under state or federal standards to obtain the discovery he sought through the motion." (*Ibid.*)

"Under our state law standard, a *Murgia* motion must ' "describe the requested information with at least some degree of specificity and must be sustained by plausible justification." ' [Citations.] We have held a showing of 'plausible justification' requires a defendant to 'show by direct or circumstantial evidence that prosecutorial discretion was exercised with intentional and invidious discrimination in his case.' [Citation.] Similarly, under the federal standard, a defendant must produce ' "some evidence" ' tending to show the existence of both a discriminatory effect and the prosecutor's discriminatory intent." (*Montes*, *supra*, 58 Cal.4th at p. 829, italics omitted.)

The *Montes* court did not decide which of the two standards applied to the defendant's claim. The justices unanimously concluded "the trial court did not err by denying the discovery motion under either the *Murgia* or *Armstrong* standard." (*Montes*, *supra*, 58 Cal.4th at p. 832.) Recently, in *People v. Suarez* (2020) 10 Cal.5th 116, the California Supreme Court again assumed the continuing validity of *Murgia* motions. (*Suarez*, at p. 177.) Quoting heavily from *Montes*, the *Suarez* court reiterated the moving party's threshold burdens under federal and state law but once again refrained from deciding which standard applies. The justices upheld the trial court's denial of the *Murgia* motion, concluding the defendant had "not made the requisite showing." (*Suarez*, at p. 178.)

The *Baez* opinion appears to be the last published Court of Appeal decision on this subject. Since the viability of *Murgia* motions now depends on a federal constitutional basis for the discovery, *Baez* concludes such motions are governed by the *Armstrong* standard. (*Baez*, *supra*, 79 Cal.App.4th at pp. 1188–1190.) We agree with this reasoning. (See Pen. Code, §§ 1054, subd. (e) ["no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States"], 1054.5, subd. (a) ["No order requiring discovery shall be made in criminal cases except as provided in this chapter…."].)

9.

"In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute … generally rests entirely in his [or her] discretion.' " (*Armstrong*, *supra*, 517 U.S. at p. 464; accord, *People v. Lucas* (1995) 12 Cal.4th 415, 477.) "As a result, 'the presumption of regularity supports' their prosecutorial decisions and, '*in the absence of clear evidence to the contrary*, courts presume that they have properly discharged their official duties.' " (*Armstrong*, at p. 464, italics added.) There is also a " 'background presumption' that 'the showing necessary to obtain [related] discovery should itself be a significant barrier to the litigation of insubstantial claims.' " (*Baez*, *supra*, 79 Cal.App.4th at p. 1189, quoting *Armstrong*, *supra*, 517 U.S. at pp. 463–464.)

To establish a claim of discriminatory prosecution, " 'the defendant must prove: (1) "that he has been deliberately singled out for prosecution on the basis of some invidious criterion"; and (2) that "the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities." ' " (*Baluyut*, *supra*, 12 Cal.4th at p. 832.) " 'The justifications for a rigorous standard for the elements of a selective-prosecution claim … require a correspondingly rigorous standard for discovery in aid of such a claim.' " (*Baez*, *supra*, 79 Cal.App.4th at p. 1189, quoting *Armstrong*, *supra*, 517 U.S. at p. 468.) Accordingly, the defendant's burden on a *Murgia* motion is to produce " '*some evidence* tending to show the existence of the essential elements of the defense,' [i.e.,] discriminatory effect and discriminatory intent." (*Armstrong*, at p. 468, italics added; accord, *Baez*, at pp. 1190–1191.)

Hernandez argued the mere showing of anomalous circumstances regarding "115 proceedings" at the prison was sufficient to establish an equal protection violation. However, "an equal protection violation does not arise whenever officials 'prosecute one and not [another] for the same act' [citation]; instead, the equal protection guarantee simply prohibits prosecuting officials from purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis." (*Murgia*,

*supra*, 15 Cal.3d at p. 297.) "Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut*, *supra*, 12 Cal.4th at p. 832.)

Hernandez failed to even allege a discriminatory basis for the supposedly disparate treatment, e.g., because of his age, race, or membership in some other protected class. Nor did he allege that the Kern County District Attorney does not ordinarily prosecute inmates for drug possession. The People make similar observations in the respondent's brief.

The People argue "Hernandez did not make a plausible showing that disclosure of the MOU, assuming it did request that incidents culminating in prison disciplinary proceedings be referred for criminal prosecution, would have created a reasonable probability of prevailing on his motion to dismiss. The contents Hernandez hoped were in the MOU would not even have shown *why* the prosecution charged him, let alone that the prosecution purposefully and intentionally singled him [out] based on a discriminatory reason and would not have prosecuted him but for that discrimination.… [¶] … He marshalled no evidence showing that he was prosecuted because of his race, religion, or some other reason untethered to legitimate law enforcement goals."

In *Baez*, while addressing the abuse of discretion standard, the Sixth Appellate District discussed the "pre-Proposition 115" case of *People v. Ashmus* (1991) 54 Cal.3d 932. (*Baez*, *supra*, 79 Cal.App.4th at p. 1185.) In *Ashmus*, which was decided under the state law "plausible justification" test, the defendant's supporting evidence did show that the district attorney "treated different defendants differently." (*Ashmus*, at p. 980.) "But those facts were simply insufficient to support a claim that the district attorney's policies and practices might be arbitrary and capricious or invidiously discriminatory." (*Ibid*.) The California Supreme Court determined "that the trial court's ruling must be upheld because the trial court could reasonably have concluded that the defendant failed to

11.

satisfy his burden." (*Baez*, at p. 1185.) "Further, it could reasonably have concluded that he could not have supplied what was lacking after an evidentiary hearing." (*Ashmus*, at p. 980.)

Here, the trial court could have reasonably concluded Hernandez failed to meet the " 'rigorous standard' " under which *Murgia* motions are evaluated. (*Baez*, *supra*, 79 Cal.App.4th at pp. 1189.) It was his burden to produce " 'some evidence' in support of his discriminatory prosecution claim" (*id*. at pp. 1190–1191), but he proffered an attorney declaration consisting of speculation regarding the contents of the MOU. Since the evidence Hernandez hoped to find therein would not have shown he was "singled out for a prosecution that [was] 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification' " (*Baluyut*, *supra*, 12 Cal.4th at p. 831), the trial court was justified in declining to review the MOU.

## DISPOSITION

The judgment is affirmed.

DE SANTOS, J.

WE CONCUR:

FRANSON, ACTING P. J.

PEÑA, J.

12.