[No. A057304. First Dist., Div. Three. Mar. 3, 1993.]

CHARLES LEE GRAHAM, Plaintiff and Appellant, v.
ROBERT HOPKINS, Defendant and Respondent.

## COUNSEL

Brigham & Gaustad and Thomas S. Brigham for Plaintiff and Appellant.

Krimen & Bjornsen and Joshua L. Bright for Defendant and Respondent.

## OPINION

WHITE, P. J.—Charles Lee Graham (plaintiff) appeals after the trial court, sitting as fact finder, concluded that the machine which caused injury to plaintiff was not a "power press" within the meaning of Labor Code section 4558.[1] That section creates an exception to the exclusive remedy provision of the workers' compensation system. (§ 3602; *Bingham* v. *CTS Corp.* (1991) 231 Cal.App.3d 56, 61 [282 Cal.Rptr. 161].) It permits a worker to sue his employer when the worker is injured by a "power press" which is operated without a point of operation guard. We affirm the trial court judgment.

### I

### FACTS

Plaintiff worked for defendant Robert Hopkins as a machine operator. While he was operating a large wood molding machine in the course of his employment, plaintiff caught his hand in the machine and was injured.

Plaintiff filed suit against his employer for personal injury, alleging that suit was authorized by section 4558, subdivision (b). That section provides in pertinent part: "An employee . . . may bring an action at law for damages against the employer where the employee's injury or death is proximately

---

[1]Unless otherwise indicated, all further statutory references are to the Labor Code.

caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, . . ."

The parties agreed to bifurcate the action and to have a separate trial to determine whether the wood molding machine at issue was a "power press" within the meaning of section 4558. Section 4558, subdivision (a)(4) defines "power press" as "any material-forming machine that *utilizes a die* which is designed for use in the manufacture of other products." (Italics added.)

The evidence at trial established that the machine which caused the injury is known as a Festo molding machine. The principal components of the Festo machine are five cutting heads (although only four were in operation at the time of the accident). Each head is a metal cylinder approximately four inches in diameter by five inches high. Adjustable metal blades protrude beyond the curvature of the cylinder and it is these blades, rotating at high speed, which perform the cutting or planing action on boards fed into the machine. A worker operates the machine by placing boards into the "feed rollers." The feed rollers move the board along a metal slideway. As the board moves past the cutting heads, each head in turn cuts or planes a different side of the board, forming the wood into the desired shape. (See appendix for diagram.)

At trial, the parties agreed that the Festo machine is a "material-forming" machine and is "designed . . . for use in the manufacture of other products." (§ 4558, subd. (a)(4).) They differed, however, on whether the Festo machine utilizes a "die"—an essential characteristic of a power press.

Plaintiff's mechanical engineering expert testified that a die can be broadly defined as "a device which shapes materials." This definition was based in part on a dictionary definition of "die." Applying this definition, plaintiff's expert testified that the four cutting heads, working in conjunction, formed a die. More generally, plaintiff's expert testified the Festo machine can be "likened" to an "extrusion press" because the machine itself forces the material through the cutting heads which shape the material.

Defendant's expert, on the other hand, testified that the Festo machine does not utilize a die. The defense expert relied on the definition of "die" found in *Ceja* v. *J. R. Wood, Inc.* (1987) 196 Cal.App.3d 1372 [242 Cal.Rptr. 531], where the appellate court concluded that a saw blade is not a "die" within the meaning of section 4558. (*Ceja, supra*, at p. 1377.) The defense expert stated: "[T]he action of the Festo cutter heads is closely analogous to the action of a saw blade, which *Ceja* deals with explicitly, therefore, the action of the cutter heads here isn't a die type action."

The trial court agreed with the defense expert and concluded that "[t]he Festo's tooling cuts in a manner substantially similar to a saw and very much like a planer and not like a die, . . ." Because the Festo machine did not utilize a "die," and was therefore by definition not a "power press," the trial court entered judgment in favor of defendant.

## II

### DISCUSSION

#### A. *The Festo Machine Does Not Utilize a Die.*

■ "The construction of the meaning of a statute is a matter of law which we consider anew. [Citations.] Nonetheless, we give deferential consideration to the trial court's opinion and ruling on the meaning of section 4558. [Citation.]" (*Bingham* v. *CTS Corp., supra,* 231 Cal.App.3d at p. 62 [construing meaning of "point of operation guard" as used in § 4558].)

In *Ceja* v. *J. R. Wood, Inc., supra,* 196 Cal.App.3d 1372, the court considered whether a hand-held circular power saw is a "power press" within the meaning of section 4558. The *Ceja* court essentially conceded that a circular saw is a "material forming-machine" which may be used to produce other products. The court concluded, however, that a circular saw does not utilize a "die" as required by section 4558, subdivision (a)(4). In reaching this conclusion, the *Ceja* court cited two separate definitions of "die." First, the court cited the California Code of Regulations, which defines "die" as "[t]he tooling used in a press for cutting or forming material. An upper and a lower die make a complete set." (Cal. Code Regs., tit. 8, § 4188, p. 432.167; *Ceja, supra,* at p. 1376.) Based on this definition, the court concluded that "[a] die . . . consists of an upper and lower tool that together form a set." (*Ceja, supra,* at p. 1376.)

In addition, the *Ceja* court relied on the following dictionary definition of "die": "[A]ny of various tools or devices, originally cubical in form, for molding, stamping, cutting, or shaping; specif., *a)* a piece of engraved metal used for stamping money, medals, etc. *b)* the stationary part of a machine for shaping or punching holes in sheet metal, etc.; . . . *c)* the punch and matrix as a unit *d)* a tool used for cutting threads, as of screws or bolts *e)* a piece of metal with a hole through it, used in drawing wire, extruding rods, etc. . . ." (Webster's New World Dict. (2d college ed. 1982) p. 392, quoted in *Ceja* v. *J. R. Wood, Inc., supra,* 196 Cal.App.3d at p. 1376, fn. 2.)

■ Although we agree with the holding of *Ceja*—that a saw blade is not a die—we do not agree with the dicta in that case that a die "consists of

an upper and lower tool that together form a set." Defendant's own expert testified that there are "single-piece" dies, such as extrusion presses, which force malleable material, such as heated metal, through a single die to create, for example, wire or rods. That qualification aside, however, we agree with the *Ceja* court that a die forms or cuts material "in a substantially different way" from a saw blade or the cutting heads at issue in this case. (*Ceja* v. *J. R. Wood, Inc., supra,* 196 Cal.App.3d at p. 1376.)

Unfortunately, it is easier to define what is *not* a die on a case by case basis than it is to develop an all-encompassing definition which will be appropriate in all cases. However, one characteristic we do note that is common to all the devices mentioned in the dictionary definition above, is that in each case the shape of the "die" itself determines the shape of the product that is formed. That is, in each case, the product formed or the cut made is in some sense a "mirror image" of the die. Of course, that is not true of a saw blade or the Festo machine cutting heads. In short, the cutting heads do not fall within the common definition of the word "die."

The definition of "die" plaintiff would have us adopt—"a device which shapes materials"—is so broad that it would rob the word of any meaning or purpose within the statute, thereby violating the cardinal rule that each word in a statute is presumed to have meaning and to perform a useful function. (*Ceja* v. *J. R. Wood, Inc., supra,* 196 Cal.App.3d at p. 1376.) Indeed, under this definition a chisel, a pair of scissors or a whittling knife would all be "dies." Common sense suggests the definition cannot be stretched that far.

Finally, we are not persuaded by plaintiff's argument based on the legislative history of section 4558. The original senate bill proposing the power press exception actually referred to a "machine tool." (Sen. Bill No. 1143 (1981-1982 Reg. Sess.) § 1.) That Senate bill was absorbed by a more comprehensive law, Assembly Bill No. 684. (Assem. Bill No. 684 (1981-1982 Reg. Sess.) § 12.) The original "working draft" of Assembly Bill No. 684—which was never introduced in the Assembly—created an exception for injuries on a "punch press."[2] (§ 4558, subd. (a)(4).) However, *as introduced* in the Assembly, the bill created an exception for injuries on a "power press." (Assem. Bill No. 684 (1981-1982 Reg. Sess.) § 12.) Plaintiff contends that by changing "punch press" to "power press" the Legislature intended to broaden the scope of the machines included within the exception.

There are two problems with this argument. First, there is no evidence the "working draft" was ever before or considered by the Legislature as a whole,

---

[2]Appellant requested that the trial court take judicial notice of the working draft, which was part of the Senate committee policy file.

and therefore it is not necessarily indicative of "legislative" intent. (See *Jones* v. *Pierce* (1988) 199 Cal.App.3d 736, 746 [245 Cal.Rptr. 149].) Second, even if we assume the "working draft" does have some relevance to legislative intent, it does not support plaintiff's argument. The "working draft" and the bill which was ultimately introduced defined the machine at issue in a nearly identical manner, and in each case required that the machine utilize a "die." (Assem. Bill No. 684, § 12;[3] § 4558, subd. (a)(4).) If anything, the Legislature changed the wording to more accurately fit the definition they had already created, not to broaden that definition.

In sum, because the Festo machine does not utilize a "die," it is not a power press within the meaning of section 4558.

### B. *Plaintiff Has Not Been Denied Equal Protection of the Law.*

 Plaintiff next contends that if the Festo machine is not a "power press" within the meaning of section 4558, then he has been denied the equal protection of the law because there is no reason to distinguish between the danger presented by the Festo machine and the danger presented by a power press. We reject this argument.

Plaintiff does not argue that a suspect classification or fundamental right is at issue in this case. Instead, he argues the classification here fails to meet even the lower tier of equal protection analysis; that is, plaintiff claims the classification is not rationally related to a legitimate state interest. (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 602, p. 56; *Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601].)

In *Ceja*, the court stated that "[t]he obvious legislative intent and purpose in section 4558 is to protect workers from employers who wilfully remove or fail to install appropriate guards on large power tools. Many of these power tools are run by large mechanical motors or hydraulically. . . . These sorts of machines are difficult to stop while they are in their sequence of operation. Without guards, workers are susceptible to extremely serious injuries. For this reason, the Legislature passed section 4558, subdivision (b), which subjects employers to legal liability for removing guards from powerful machinery where the manufacturer has designed the machine to have a protective guard while in operation." (*Ceja* v. *J. R. Wood, Inc., supra*, 196 Cal.App.3d at p. 1377; *Bingham* v. *CTS Corp., supra*, 231 Cal.App.3d at pp. 64-65.)

---

[3]The "working draft" of Assembly Bill No. 684 defined a "punch press" as "any material-forming machine that utilizes a die mechanism which is designed for use in the manufacture of other products."

Plaintiff contends the Festo machine is a "large power tool[]" which is "difficult to stop while [in its] sequence of operation." Consequently, he argues there is no rational reason for permitting those who are injured by "power presses" to bring suit against their employers, while denying that right to him. Plaintiff misconceives the nature and scope of legislative power.

■ " '[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none.' (*Silver* v. *Silver*, 280 U.S. 117, 123 . . . . [¶] . . . 'The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free . . . to confine its regulation to those classes of cases in which the need is deemed to be the most evident.' (*Board of Education* v. *Watson*, 63 Cal.2d 829, 833 . . . .) . . . A legislative classification is reasonable ' "if any set of facts reasonably can be conceived that would sustain it." ' [Citation.]" (*Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488, 497-498 [126 Cal.Rptr. 659]; *Leavenworth Properties* v. *City and County of San Francisco* (1987) 189 Cal.App.3d 986, 992-993 [234 Cal.Rptr. 598]; see also *People* v. *Banner* (1992) 3 Cal.App.4th 1315, 1322-1323 [5 Cal.Rptr. 125].)

■ Here, the Legislature was free to assume that the need for protection was "most evident" in the case of power presses which utilize dies. The Legislature could properly conclude that those machines *uniformly* present a serious danger to workers when point of operation guards are removed, because they uniformly employ a powerful pressing or stamping motion which can cause serious crush injuries. It is true that other large power machines might also present a similar degree of danger. However, the Legislature was not required to provide a similar exception to those machines in order to adopt a constitutionally valid statute. In short, we can reasonably conceive of a set of facts that sustains the classification drawn, and consequently find no equal protection violation.

The judgment is affirmed.

Merrill, J., and Werdegar, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 20, 1993. Mosk, J., was of the opinion that the petition should be granted.

APPENDIX
(Nos. 1 through 4 indicate
location of cutting heads)