92 Cal.Rptr.2d 465 (2000)
22 Cal.4th 279
991 P.2d 1256
Hector ROSALES, Plaintiff and Appellant,
v.
DEPUY ACE MEDICAL COMPANY, Defendant and Respondent.
No. S078119.
Supreme Court of California.
February 7, 2000.
William J. Cleary, Jr., Los Angeles; Binder & Norris and Paul S. Norris, Pasadena, for Plaintiff and Appellant.
Graham & James, James H. Broderick, Jr., Benjamin E. Goldman, Los Angeles, and Brian F. Van Vleck for Defendant and Respondent.
Finegan, Marks & Hampton, Michael A. Marks and Ellen Sims Langille, San Francisco, *466 for California Workers' Compensation Institute as Amicus Curiae on behalf of Defendant and Respondent.
WERDEGAR, J.
Labor Code section 4558 (section 4558) provides an exception to the exclusivity of the workers' compensation system for workers injured as a result of the employer knowingly having removed or failed to install a point of operation guard on a "power press," defined in subdivision (a)(4) of the statute as "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." The issue presented in this case is, generally, the meaning of "die" for purposes of section 4558 and, specifically, whether the tool used in the power lathe plaintiff was operating when injured was a die. We conclude the undisputed facts demonstrate the tool being used was not a die and, therefore, the injury was not caused by the operation of a power press without a point of operation guard. We reverse the judgment of the Court of Appeal, which reversed the trial court's grant of summary judgment to the defendant employer.

FACTUAL AND PROCEDURAL BACKGROUND
The undisputed facts are taken from the parties' statements of undisputed facts and from other materials in support of and in opposition to defendant's summary judgment motion.
Plaintiff was injured while operating a Wasino L3-J3 lathe in the manufacture of a small aluminum knob. In this manufacturing process, the material being formed into the knob is held in a spindle, opposite which is a turret containing 12 different tooling stations. Directed in its operation by a computer, the turret brings the various tools into use to cut or otherwise form the metal. One of these tools was the Vnotching tool, a carbide-point cutting tool. It was programmed to cut a .65-inch-long groove down the side of the knob being manufactured, making six passes along the knob to successively deepen the groove.
Plaintiffs hand was injured by the Vnotching tool while it was in operation or being brought into operation. The lathe's safety sensor, which was designed to prevent operation while the door was open, had been intentionally disabled.
The superior court granted defendant's motion for summary judgment, finding section 4558 inapplicable in that "[p]laintiff does not dispute that he was injured by a lathe which uses a sharp edge cutting tool rather than a `mirror image' pressing or stamping die." The Court of Appeal reversed, rejecting the idea a power press necessarily employs a die that forms material into a "mirror image" of itself, as suggested in Graham v. Hopkins (1993) 13 Cal.App.4th 1483, 17 Cal.Rptr.2d 82. Relying on a regulatory agency's definition, the appellate court held a power press is any mechanically powered machine that forms material by use of "tools or dies" attached to slides. (Italics added.)
We granted defendant's petition for review. Two days before the scheduled oral argument, the parties jointly moved to dismiss review on the ground they had settled all claims between them. We denied the joint motion, following "the well-established line of judicial authority recognizing an exception to the mootness doctrine, and permitting the court to decline to dismiss a case rendered moot by stipulation of the parties where the appeal raises issues of continuing public importance." (Lundquist v. Reusser (1994) 7 Cal.4th 1193, 1202, fn. 8, 31 Cal.Rptr.2d 776, 875 P.2d 1279; see also People v. Eubanks (1996) 14 Cal.4th 580, 584, fn. 2, 59 Cal.Rptr.2d 200, 927 P.2d 310; Baluyut v. Superior Court (1996) 12 Cal.4th 826, 829-830, fn. 4, 50 Cal.Rptr.2d 101, 911 P.2d 1; State of Cal. ex rel. State Lands Com. v. Superior Court (1995) 11 Cal.4th 50, 60-62, 44 Cal.Rptr.2d 399, 900 P.2d 648.)

*467 DISCUSSION
We begin with the statutory language. Subdivision (b) of section 4558 provides: "An employee, or his or her dependents in the event of the employee's death, may bring an action at law for damages against the employer where the employee's injury or death is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death." Subdivision (a)(4) of section 4558 provides: "`Power press' means any material-forming machine that utilizes a die which is designed for use in the manufacture of other products."
Although this court has not previously discussed the definition of power press in section 4558, subdivision (a)(4), two Court of Appeal decisions prior to the decision below have done so in a manner pertinent to the present case. (Ceja v. J.R. Wood, Inc. (1987) 196 Cal.App.3d 1372, 242 Cal. Rptr. 531 (Ceja); Graham v. Hopkins, supra, 13 Cal.App.4th 1483, 17 Cal.Rptr.2d 82 (Graham).)
In Ceja, the plaintiff had been injured while operating a hand-held circular saw. The appellate court held the saw was not a power press because the saw blade was not a die. Referring to a dictionary definition of a die as "any of various tools or devices ... for molding, stamping, cutting or shaping," [1] and to a regulatory definition of a die as "[t]he tooling used in a press for cutting or forming material" (former Cal. Admin. Code [now Cal.Code Regs.], tit. 8, § 4188), the court explained: "A die usually forms material. It can cut material. It cuts things in a substantially different way, however, from a saw blade, [¶] Unlike a die, a saw blade cuts material with a sharp edge or sharp-edged teeth." (Ceja, supra, 196 Cal.App.3d at p. 1376, 242 Cal.Rptr. 531, fns. omitted.)
Graham elaborated on Ceja's distinction between a die and a blade. In Graham, the plaintiff was injured while operating a Festo wood-molding machine. The machine had five cutting heads, past which wooden boards were moved. A rotating blade attached to each cutting head performed a cutting or planing operation on the boards. (Graham, supra, 13 Cal. App.4th at p. 1486, 17 Cal.Rptr.2d 82.) The Graham court noted a common characteristic in all the devices mentioned in the dictionary definition quoted in Ceja: "[I]n each case the shape of the `die' itself determines the shape of the product that is formed. That is, in each case, the product formed or the cut made is in some sense a `mirror image' of the die. Of course, that is not true of a saw blade or the Festo machine cutting heads. In short, the cutting heads do not fall within the common definition of the word `die.'" (Graham, supra, at p. 1488, 17 Cal.Rptr.2d 82.) The Graham court went on to reject the definition of "die" proposed by the plaintiff in that case: "`a device which shapes materials' "as so broad that it would render the term without meaning or purpose in section 4558 and as potentially including, contrary to common usage, such instruments as "a chisel, a pair of scissors or a whittling knife." (Graham, supra, at p. 1488, 17 Cal.Rptr.2d 82.)
The Court of Appeal below disagreed with Graham's approach. Citing the regulatory definition quoted in Ceja as well as *468 an unabridged dictionary definition,[2] the court found it "apparent ... that a `die,' as that term is used in section 4558, should be very broadly construed and necessarily includes any cutting or forming tools which are utilized in a power press. Obviously, this will include tools which operate in ways other than being pressed or stamped into material in order to make a mirror image." (Italics in original.) Without further addressing the nature of a die, the lower court adopted a definition of "power operated presses" from safety standards promulgated by the Occupational Safety and Health Standards Board (Cal.Code Regs., tit. 8, § 4188, subd. (b)): "all mechanically powered machines that shear, punch, form, or assemble metal or other materials by means of tools or dies attached to slides...."
Defendant endorses the Graham court's analysis, according to which a die forms material by imparting to the material some version of the die's own shape, and contends the Court of Appeal below erred in omitting from its definition of "power press" the statutory element that the press use a die as distinguished from a cutting blade or other tool. Plaintiff contends Graham erred in this respect and agrees with the Court of Appeal below that a die should instead be broadly understood as a material-forming tool.
We agree with defendant and the Graham court. From the dictionary definitions previously quoted (see fns. 1 & 2, ante), as well as others we have consulted,[3] the term "die" clearly denotes not *469 all material-forming tools, but a subset of such tools. The devices described in dictionary definitions of "die" generally share two pertinent characteristics. First, they impart form to the material by impact or pressure against the material, rather than along the material. Second, they impart to the material some version of the die's own shape. The two characteristics are logically related, since the die, acting by impact against the material, can only alter the form of the material where it impacts it, necessarily leaving an impression or cutout of its own shape (unlike a linear cutting blade that, moving along the surface of the material, can be directed to cut out any desired shape). The first characteristic (impact or pressure against or through the material) particularly describes dies used in presses and hence limits the term as used in section 4558, subdivision (a)(4); but, because the first characteristic necessarily implies the second, the Graham court did not err in treating the second characteristic as a test of whether a tool is a die within the meaning of section 4558, subdivision (a)(4).
In all its pertinent uses, then, the term "die" refers to a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding; in none of its uses does the term refer to a tool that imparts shape by cutting along the material in the manner of a blade. As it is undisputed the V-notching tool at issue in this case formed the material by cutting along its surface, the superior court correctly concluded the tool was, as a matter of law, not a die.
It may be that one or more types of dies referred to in the quoted dictionary definitions are exceptions to the above general principles in that they act to shape material by means other than by pressing or impacting against or through the material. Assuming that to be so, however, we nonetheless do not believe the Legislature intended the term "die" in section 4558, subdivision (a)(4)a die used in a power pressto be understood more broadly than as a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding. Indeed, as the Graham court noted, the Legislature presumably believed the operation of power presses without point of operation guards to be particularly dangerous, because a press typically forms or cuts the material by use of high pressure or strong impact of the die against or through the material, using a "powerful pressing or stamping motion which can cause serious crush injuries." (Graham, supra, 13 Cal.4th at p. 1490, 56 Cal.Rptr.2d 49, 920 P.2d 1254.) In defining a "power press," for purposes of section 4558, in terms of a "die," the Legislature patently intended to embody the characteristic that differentiates "press[es]" from other "material-forming machine[s]," i.e., the use of a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding.
That the definition of "power press" promulgated by the Occupational Safety and Health Standards Board (Cal.Code Regs., tit. 8, § 4188, subd. (b)), upon which the appellate court below relied, may be broader than that in section 4558 in its inclusion of other "tools" as well as dies is of no significance in interpreting section 4558.[4] The Occupational Safety and *470 Health Standards Board is not charged with enforcing section 4558's exception to workers' compensation exclusivity. Nor was that board's definition of power press promulgated under the authority of section 4558 or as a purported interpretation of that statute; rather, the cited authority for the regulation is Labor Code section 142.3, which merely grants the board the power to adopt occupational safety and health standards. In any event, section 4558 provides its own definition of "power press" a definition that limits the category to machines using dies.
Large power-operated machines of many kinds may present dangers similar to those presented by the narrower class of machines defined in section 4558, and the government may rationally prescribe various safety procedures and mechanisms for that broader class of machines. This does not affect the Legislature's decision to select certain machines only, and certain kinds of injury only, for an exception to the exclusive jurisdiction of the workers' compensation system over employees' workplace injuries. Even if we were convinced point of operation guards were as essential for the safe operation of power lathes as of power presses, and observed that a regulatory agency had taken steps to ensure power lathes are so equipped, we could not rewrite section 4558 to include what has been omitted. (See McCoy v. Zahniser Graphics, Inc. (1995) 39 Cal. App.4th 107, 111, 45 Cal.Rptr.2d 871 [plaintiff "misses the mark" with argument that a printing press should be considered a power press because the "`gravity of harm'" arising from its use is similar].)
Relying on a portion of his own deposition in which he asserted the V-notching tool cuts by "impact," plaintiff contends a triable issue of fact remains, even under the Graham approach, because the tool may have actually cut by a stamping motion. Plaintiff, however, formally agreed the following fact was undisputed: "During the manufacture of the aluminum knob ... the V-Notching tool creates a V-notch on the knob by moving down the side of the knob and making a cut which is .65 inches in length." This undisputed fact is inconsistent with his suggestion, made for the first time on appeal, that the tool cuts by stamping rather than by slicing or pushing the material along the line of the cut. In context, moreover, plaintiffs deposition claim that the tool cut by "impact" could not have referred to a stamping motion, since he agreed, at the same time, that in operation the tool was "slidingor cutting along the length of the material," was "in contact with the material," was "moving down the side of the knob as the knob is held in the spindle," and that .65 inches was "the length of the travel of the cut."
Finally, in what plaintiff lauds as "a master stroke of legal acuity," the appellate court below held it was not enough for defendant to demonstrate that the V-notching tool, the only tool in operation at the time of plaintiffs injury, is not a die; defendant could prevail on summary judgment only by showing that none of the 12 tools installed on the Wasino L3-J3 lathe are dies. The court reasoned that because section 4558 applies to specified injuries in the use of a power press, and defines a power press as a "material-forming machine that utilizes a die" (§ 4558, subd. (a)(4)), the statute applies whether or not the machine was using a die at the time of injury.
We are less impressed with this reasoning than is plaintiff. Section 4558 applies only to injuries proximately caused by the employer's knowing removal of, or failure to install, a point of operation guard on a power press. (§ 4558, subd. (b).) An injury caused by the operation of a machine that could operate as a power press, but was not so operating at the time of *471 injury, would not be proximately caused by the employer's removal of, or failure to install, a point of operation guard on a power press. As the evident intent of the statute was to provide a greater remedy for those workers injured in power press accidents, moreover, it would make no sense to interpret the statute as applying, as well, when the worker was operating, say, a power lathe, even if the same machine could, under other circumstances, have been used as a press. That the undisputed facts demonstrate the V-notching tool is not a die was, therefore, sufficient to support the grant of summary judgment to defendant.
In summary, section 4558's exemption from workers' compensation exclusivity applies, by the statute's own plain and express terms, only to material-forming machines utilizing a die; contrary to the appellate decision below, machines using other types of tools to cut material are not within the statute's application, even if they would meet a regulatory agency's definition of power press.

DISPOSITION
The judgment of the Court of Appeal is reversed.
GEORGE, C.J., KENNARD, J., BAXTER, J., CHIN, J., and BROWN, J., concur.
Dissenting Opinion by MOSK, J.
I dissent.
This case presented the question whether a single machine, the Wasino L3-J3, is a power press under Labor Code section 4558, which permits an employee to bring an action for damages against an employer for injury caused by the employer's knowing removal of a point of operation guard on such a device. The statute defines a power press as "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." (Id., subd. (a)(4).)
The parties, having settled the matter out of court, sought dismissal before oral argument. The majority, apparently concluding that it raises an important question of law, retained jurisdiction and now determine that the Wasino L3-J3 is not a power press. In my view, the case should have been dismissed. It now has no significance for the parties and is of limited precedential value: it properly involves only a question of fact as to whether a single machine was used by plaintiff Hector Rosales as power press; the point is now moot.
I also disagree with the majority's result. They determine that Rosales, who was injured after defendant Depuy Ace Medical Company intentionally removed a point of operation guard from the Wasino L3-J3, could not seek a tort remedy under Labor Code section 4558 because the machine is not a power press within the meaning of the statute. They do so based on a handful of common dictionary definitions of the word "die"  excluding other definitions that would be inconsistent with their result, and dismissing as "of no significance" the regulatory definitions of the Occupational Safety and Health Standard Board. (Maj. opn., ante, 92 Cal. Rptr.2d at p. 468, 991 P.2d at p. 1259.) They assert that a die must "impart form to the material by impact or pressure against the material" and imparts "some version of the die's own shape." (Ibid., italics in original.) I am not persuaded. Even the dictionaries consulted by the majority suggest otherwise. (See maj. opn., ante, 92 Cal.Rptr.2d at pp. 468-169, fn. 3, 991 P.2d at p. 1259, fn. 3.)
The statute merely requires that the machine in question be "material-forming" and that it "utilize[] a die which is designed for use in the manufacture of other products." (Lab.Code, § 4558, subd. (a)(4).) It appears that Rosales, an experienced machinist who operated the Wasino L3-J3 for over a decade, thought he was using a power press; so did his supervisor. Much of the expert testimony in the record *472  including that of a mechanical engineer with 32 years of experience in machine safety  is inconsistent with the conclusion that the Wasino L3-J3 is not a power press.
In my view, this dispute was not properly subject to resolution by way of summary judgment in light of the numerous disputed issues of material fact, such as whether the machine was in fact operating by impact against the material when Rosales was injured. In addition, as the Court of Appeal correctly ruled, summary judgment was inappropriate because there was no determination that the Wasino L3-J3 does not operate as a power press in all of its numerous functions; i.e., liability could apply even if a die were not in operation at the time of injury, so long as the machine itself may be used as a power press. These were questions for a jury.
For these reasons, I dissent.
NOTES
[1] The full definition quoted by the Ceja court is: "`[D]ie any of various tools or devices, originally cubical in form, for molding, stamping, cutting, or shaping; specif., a) a piece of engraved metal used for stamping money, medals, etc. b) the stationary part of a machine for shaping or punching holes in sheet metal, etc.; matrix: distinguished from punch ... c) the punch and matrix as a unit d) a tool used for cutting threads, as of screws or bolts e) a piece of metal with a hole through it, used in drawing wire, extruding rods, etc....' (Webster's New World Diet. (2d college ed.1982) p. 392.)" (Ceja, supra, 196 Cal. App.3d at p. 1376, fn. 2, 242 Cal.Rptr. 531, ellipses in Ceja.)
[2] "[A]ny of various tools or devices for imparting a desired shape, form, or finish to a material: as a (1): one of a pair of cutting or shaping tools that when moved toward each other produce a certain desired form in or impress a desired device on an object by pressure or by a blow, this tool being the larger of the pair or the part into which the punch enters  called also matrix (2): a device composed of a pair of such tools (3): a set of dies (as a set of triple-action dies including the matrices, punches, springs) that make up the complete tool b: a hollow internally threaded screw-cutting tool made in one piece or composed of several cutting parts, often adjustable as to distance, and used for forming screw threads (as on bolts) . . . c: a knife or cutter used to cut out blanks (as for soles in shoemaking) d: the mold in which a die casting, a powdered-metal casting, or a drop forging is made e: a block of hard metal or precious stone with a perforation of definite shape that is used in making wire and rod by drawing or extrusion f: a perforated block through which plastic material is forced to make it assume a desired shape: as (1): such a block through which clay is forced in molding bricks (2): the metal end of a cookie press or cake decorator that is pierced with various designs through which dough or frosting can be forced out into fancy shapes g: a heavy iron ring or block on which ore is crushed (as in an edge mill or a stamp mill) h (1): a metal block with a designed in intaglio into which a matching counterpart forces material (as paper or board) to be die-stamped or embossed . .. (2): a comparable device used to stamp, emboss, or mold a seal (as on paper or wax) 1: a rigid assembly of steel cutting and creasing rules with which flat sheets of paperboard are stamped out before being folded into cartons 7. ...: a block of metal on which the design of a postage stamp is engraved and which is used in making the repeated impressions that form the printing plate." (Webster's New Internat. Diet. (3d ed.1966) p. 628, col. 3.)
[3] "5. An engraved stamp used for impressing a design or figure upon some softer material, as in coining money, striking a medal, embossing paper, etc.... 6. The name of various mechanical appliances: spec. a. One of two or more pieces (fitted in a stock) to form a segment of a hollow screw for cutting the thread of a screw or bolt. b. The bed-piece serving as a support for metal from which a piece is to be punched, and having an opening through which the piece is driven, c. Forging. A device consisting of two parts which act together to give to the piece swaged between them the desired form. d. Brick-making. A mouth-piece or opening through which the clay is forced, serving to mould it into the required form. e. A part of the apparatus used in crushing ore .... f. Shoe-making, etc. A shaped knife for cutting out blanks of any required shape and size..." (4 Oxford English Diet. (2d ed.1989) p. 630, col. 2.)

"1. Mach. a. any of various devices for cutting or forming material in a press or stamping or forging machine, b. a hollow device of steel, often composed of several pieces to be fitted into a stock, for cutting the threads of bolts or the like. c. one of the separate pieces of such a device, d. a steel block or plate with small conical holes through which wire, plastic rods, etc., are drawn. 2. an engraved stamp for impressing a design upon some softer material, as in coining money." (Random House Unabridged Diet. (2d ed.1993) p. 551.)
"A tool or mold used to impart shapes to or to form impressions on materials such as metals and ceramics." (McGraw-Hill Diet, of Scientific and Technical Terms (1974) p. 405.)
[4] We do not say here that it is broader. The "slide" by which the tool or die must be activated under the regulatory definition is not expressly defined in the regulation, but it is apparently the same as a "ram" ("A reciprocating part of the machine ... sometimes called plunger, slide, or mandrel." (Cal.Code Regs., tit. 8, § 4188, subd. (b))), perhaps implicitly limiting the "tools" concerned to those that operate, in the manner of a die, by pressure or impact.