[No. B165491. Second Dist., Div. Four. July 9, 2004.]

KEYN HERNANDEZ ISLAS, Plaintiff and Appellant, v.
D & G MANUFACTURING COMPANY, INC., Defendant and Respondent.

COUNSEL

Blumberg Law Corporation, Ave Buchwald and John P. Blumberg for Plaintiff and Appellant.

Evans, Brizendine & Silver and William D. Evans for Defendant and Respondent.

OPINION

**CURRY, J.**—In a personal injury action by appellant Keyn Hernandez Islas, the trial court determined as an issue of preliminary fact that Islas was not injured by a "power press" within the meaning of Labor Code section 4558, and subsequently entered an order dismissing Islas's action. We reverse.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2001, Islas filed a complaint for personal injury against National Sheet Metal Machines, Inc. (National) and respondent D & G Manufacturing Company, Inc. (D & G). The complaint alleges that on October 31, 2000, Islas was employed by D & G, and was operating a power press made by National. It further alleges that D & G and National failed to provide proper operation guards on the machine, and as a result, it amputated two of Islas's fingers. Islas subsequently dismissed his action against National.

Trial was set for November 26, 2002. On October 1, 2002, D & G filed a motion for summary judgment, contending that the machine that injured Islas was not a "power press" within the meaning of Labor Code section 4558, and thus Islas's action was barred under the exclusive remedy rule of the Workers' Compensation Act (Lab. Code, § 3600 et seq.). On November 7, 2002, the trial court denied the motion as untimely.

On November 15, 2002, D & G asked the trial court make a preliminary determination of fact pursuant to Evidence Code section 405 regarding the machine's status under Labor Code section 4558. Following a hearing on this request, the trial court determined that the machine was not a power press machine, and it dismissed Islas's action on December 19, 2002. This appeal followed.

## DISCUSSION

Islas contends that the trial court improperly determined, as a preliminary issue of fact, that the machine was not a power press under Labor Code section 4558. We agree.

■ Labor Code section 4558 states an exception to the "exclusive remedy" rule of the Workers' Compensation Act. (*Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1515 [285 Cal.Rptr. 385]; Lab. Code, § 3600, subd. (a).) "A cause of action under section 4558 includes the following elements: (a) that the injury or death is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press; and (b) that this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death. [Citation.]" (*Saldana*, at p. 1516.)

■ The key issues here concern the term "power press," which is defined in Labor Code section 4558, subdivision (a)(4), to mean "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." Because the statute does not define the term "die," the courts have interpreted this term in several factual contexts.

In *Ceja v. J. R. Wood, Inc.* (1987) 196 Cal.App.3d 1372, 1376–1377 [242 Cal.Rptr. 531], the court held that as a matter of law, a circular saw blade, as used in a hand-held saw, is not a die. Subsequently, in *Graham v. Hopkins* (1993) 13 Cal.App.4th 1483, 1486–1489 [17 Cal.Rptr.2d 82], the court concluded as a matter of law that a machine that shaped materials by means of five spinning cutting heads did not employ a die.

In *Rosales v. Depuy Ace Medical Co.* (2000) 22 Cal.4th 279, 284–285 [92 Cal.Rptr.2d 465, 991 P.2d 1256], our Supreme Court provided a general characterization of the statutory term "die." In *Rosales*, the court confronted a lathe that held items in a spindle, and shaped these items by passing them along a tool that cut grooves in them. (*Id.* at p. 281.) On the basis of dictionary definitions and case law, the court in *Rosales* determined that the term "die' denotes a class of tools with two features. "First, they impart form to the material by impact or pressure *against* the material, rather than *along* the material. Second, they impart to the material some version of the die's own shape. The two characteristics are logically related, since the die, acting by impact against the material, can only alter the form of the material where it impacts it, necessarily leaving an impression or cutout of its own shape (unlike a linear cutting blade that, moving along the surface of the material, can be directed to cut out any desired shape)." (*Id.* at pp. 284–285.)

█ The *Rosales* court concluded: "In all its pertinent uses, . . . the term 'die' refers to a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding; in none of its uses does the term refer to a tool that imparts shape by cutting *along* the material in the manner of a blade." (*Rosales, supra,* 22 Cal.4th at p. 285.) It thus determined, as a matter of law, that the cutting tool on the lathe was not a die because the record unequivocally demonstrated that it cut along the material, rather than by impact. (*Id.* at pp. 285–287.)

Here, D & G asked the trial court to determine, pursuant to Evidence Code section 405, whether the machine that injured Islas was a power press, contending that this issue implicated the trial court's jurisdiction over Islas's action. In making its determination, the trial court relied, in large measure, upon the parties' showings in connection with D & G's unsuccessful motion for summary judgment.

On summary judgment, the parties did not disagree that the machine in question is a hydraulic metal cutting or shearing device, with two blades, one movable and one fixed. At the operator's command, hydraulic movement lowers the upper movable blade, which cuts through sheets of metal (or stock) resting on the bottom fixed blade. The manufacturer's diagram depicts the lower blade as horizontal, and the upper blade as nearly parallel to lower blade. Islas was injured when he used the machine to cut an edge from metal stock.

Nonetheless, the parties presented conflicting evidence regarding the proper characterization of the blades. D & G submitted deposition testimony from John Gleason, a supervisor for D & G, who denied that the blades were properly classified as a "die." Raymond M. Chace, D & G's engineering

expert, suggested in a declaration that the machine "cuts the stock in a shearing manner similar to using scissors." Chace also denied that either blade was properly characterized as a die.

In response, Islas submitted other testimony from Gleason. Gleason stated that the edges of the blades are square, and not sharp like a chisel or serrated. He further indicated that unlike scissors, the upper blade moves straight down, and does not swivel as it moves. According to Gleason, the lower blade is horizontal, and the upper blade is mounted at "a little bit of an angle," so that it "starts cutting at one edge [of the stock] and works its way over as it comes down." He characterized the movement of the blades as "[s]imilar to a guillotine."

In addition, Islas presented a declaration from Thomas F. Brown, an engineer, who opined that the machine was a power press under Labor Code section 4558. He stated that the machine's blades were removable, and in the usage of die designers and fabricators, were called—as a mated pair—a "die." Brown also stated that the upper blade is usually called a "punch," and the lower blade, a "die."

In opposing the request for a preliminary determination, Islas also submitted deposition testimony from Jimmy E. Smith, a vice-president of National. According to Smith, the upper blade comes down with a force of 800 pounds per square inch, and it produces a straight edge in stock. Although National manufactured only one kind of blade for the machine, other blades could be made for it.

Following a hearing, the trial court found that Islas had not been injured by a power press, and concluded that it thereby lacked jurisdiction over Islas's action. In our view, the trial court erred.

■ Generally, the trial court is authorized to determine preliminary facts, that is, facts "upon the existence or nonexistence of which depends the admissibility or inadmissibility of evidence." (Evid. Code, § 400.) Preliminary facts fall into two categories.

■ Under Evidence Code section 403, the trial court may determine preliminary facts regarding the relevance of evidence, the personal knowledge of a witness, the authenticity of a writing, and the statements and conduct of a person. (Evid. Code, § 403, subd. (a).) The trial court's role here is to assess whether there is sufficient evidence to present these matters to the jury. (*LeGrand v. Yellow Cab. Co.* (1970) 8 Cal.App.3d 125, 133 [87 Cal.Rptr. 292].) If there is, the matter is submitted to the jury for a final determination; if not, the matter is inadmissible. (*Ibid.*)

As Witkin explains, "[t]he preliminary fact questions in this class of cases are those which have been 'traditionally regarded as jury questions.' They involve 'the credibility of testimony or the probative value of evidence that is admitted on the ultimate issues. It is the jury's function to determine the effect and value of the evidence addressed to it. . . . If the judge finally determined the existence or nonexistence of the preliminary fact, he would deprive a party of a jury decision on a question that the party has a right to have decided by the jury.' [Citation.] [Citations.]" (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 52, p. 85.)

■ Under Evidence Code section 405, the trial court may determine preliminary facts regarding "evidentiary rules designed to withhold evidence from the jury because it is too unreliable to be evaluated properly or because public policy requires its exclusion." (Assem. Com. on Judiciary com., reprinted at 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 405, p. 374.) In making this determination, the trial court identifies (1) the party with the burden of producing evidence and (2) the burden of proof on the pertinent issue. (Evid. Code, § 405, subd. (a).) "If the judge is persuaded by the party with the burden of proof, he finds in favor of that party in regard to the preliminary fact . . . . Otherwise, he finds against that party on the preliminary fact . . . ." (Assem. Com. on Judiciary com., *supra*, at p. 375.)

When the factual issue resolved by the trial court overlaps with the issues subsequently submitted to the jury, the jury is not informed about the trial court's preliminary determination. (3 Witkin, Cal. Evidence, *supra*, Presentation at Trial, § 60, at pp. 92–93.) Nonetheless, as Witkin explains, "[t]he coinciding of preliminary fact and fact in issue in no way changes the rule of finality of the judge's determination of preliminary fact." (*Id.* at p. 93.)

■ Here, the trial court determined under Evidence Code section 405 that the machine was not a power press. However, this issue does not implicate any evidentiary rule concerning unreliable evidence or matters of public policy, and D & G's request for a determination did not cite any such rule. As we explain below, under the present circumstances, it is a factual question for the jury.[1]

---

[1] D & G suggests that Islas waived his procedural contentions to the ruling under Evidence Code section 405, arguing that before the trial court, Islas's counsel agreed that this provision was applicable, or otherwise failed to raise a timely objection to a determination under it. We disagree.

Although Islas's counsel agreed that the trial court could consider certain items of evidence in connection with D & G's motion, the record does not disclose an express agreement by Islas's counsel to a determination under Evidence Code section 405. On the contrary, Islas's written response to D & G's motion observes that this provision exclusively targets evidence that "is too unreliable to be evaluated properly or because public policy requires its exclusion."

Furthermore, near the end of the hearing on D & G's motion on December 2, 2002, the trial court indicated that it would make a "factual finding" that the machine in question did not use

Generally, the application of a statutory term to a specific set of facts is a question of fact for the jury, unless the material facts are undisputed and no conflicting inferences can reasonably be drawn from these facts. (*Judd v. Letts* (1910) 158 Cal. 359, 365 [111 P. 12]; see *People v. Bain* (1971) 5 Cal.3d 839, 851 [97 Cal.Rptr. 684, 489 P.2d 564]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 370–372, pp. 420–423.) Thus, in *Judd v. Letts, supra,* 158 Cal. at pages 361–362, our Supreme Court addressed a former provision of the Civil Code, which rendered an employer liable for an employee's injuries that occurred through the negligence of a coemployee " 'in another department of labor.' " Observing that the provision did not define the phrase "in another department of labor," the court in *Judd* stated that "[i]t would be difficult, if not impossible," to define this phrase "in such terms as to furnish an exact test by which to determine, on any given state of facts, whether two employees are in different departments." (*Id.* at p. 365.) It thus concluded that the question was a matter for the jury "[w]here the facts are disputed, or, if undisputed, are such as to reasonably permit contrary inferences." (*Ibid.*)

Again, *People v. Bain, supra,* 5 Cal.3d at pages 850–852, the court confronted whether a particular instrument was a "dirk or dagger" under then-effective section 12020 of the Penal Code. Although the instrument's physical configuration was not in dispute, the court in *Bain* observed that conflicting inferences about it were possible, and concluded that the matter was a question of fact for the jury. (5 Cal.3d at p. 851.)

Here, the physical configuration of the machine in question is not disputed, but the parties' showings raise conflicting inferences as to whether its blades are properly characterized as a "die." A reasonable fact finder could determine that these blades sufficiently display the two features that the *Rosales* court required of a die. Because the blades are square and nearly parallel and the machine employs hydraulic pressure, a fact finder could conclude that the blades cut primarily "by impact or pressure *against* the material," leaving an impression of the blades in the stock, namely, a straight

---

dies. Islas's counsel objected to this ruling, arguing that the trial court should limit its determination to whether there was sufficient evidence to present the issue of the machine's status to the jury. He stated: "I think in order to rule in this situation against [Islas's] position, the court has to find there's really no possibility that a jury could find in favor of [Islas]—something along that line . . . ." He also contended that "[t]here's plenty of evidence to go to the jury." The trial court nonetheless directed D & G to prepare a written order containing its findings and rulings.

Because Islas raised this objection before the trial court filed its minute order and subsequent written order, which contain its final determination on the matter, he did not waive his contention that the determination was improper under Evidence Code section 405. (See *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1169–1170 [62 Cal.Rptr.2d 466].)

line. (*Rosales v. Depuy Ace Medical Co.*, *supra*, 22 Cal.4th at p. 285.) Alternatively, a reasonable fact finder could determine that the machine does not use a die because it cuts *along* the stock, given that the blades are not precisely parallel.

 The issue was thus a question for the jury. That its resolution also determines whether Islas falls outside the "exclusive remedy" rule of the Labor Code does not alter this conclusion, given that factual issues pertinent to application of this rule are generally submitted to the jury. (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1056–1060 [103 Cal.Rptr.2d 790] [whether employee was injured in the scope of employment is an issue for the jury]; *McLandrich v. Southern California Edison Company* (S.D.Cal. 1996) 917 F.Supp. 723, 727 [whether employer-employee relationship exists is an issue for the jury].)

Because Islas was improperly denied a jury trial, the order of dismissal cannot be affirmed. (*Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604].)

## DISPOSITION

The order of dismissal is reversed, and the matter is remanded for further proceedings in accordance with this opinion. Appellant is awarded costs.

Epstein, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied August 2, 2004.