Filed 6/4/14  Salgado v. Modern Meat CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| MARTHA SALGADO, | |
| Plaintiff and Appellant, | E056030 |
| v. | (Super.Ct.No. CIVDS1100819) |
| MODERN MEAT, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

Law Office of Steve A. Hoffman and Steve A. Hoffman for Plaintiff and Appellant.

Byron & Edwards, Thomas W. Byron and Robert Scott Norman for Defendant and Respondent.

1

Plaintiff and appellant Martha Salgado (Salgado) was injured at work when four fingers of her right hand were severed by a cutting blade in a meat-packing machine. Under the worker's compensation exclusivity rule (Lab. Code, § 3600, subd. (a)),[1] and under the power press exception to that rule (§ 4558), she cannot recover against her employer, defendant and respondent Modern Meat, Inc. (Modern Meat) unless she can show that she was hurt while working on a power press that was lacking a point of operation guard. Salgado contends the trial court wrongly granted summary judgment against her on the ground that the machine was not a power press. Salgado argues she was injured by a machine that applies pressure in the course of its operation and thus the exemption should apply. Because her injury occurred at a workstation that does not qualify as a power press, we disagree that the exemption applies to this case.

## FACTUAL AND PROCEDURAL HISTORY

Salgado worked for Modern Meat as the operator of a labeling machine at their meat packaging facility in San Bernardino. On the day of her injury, she was working at a VA-430 meat packaging machine.

The VA-430 is roughly 20 feet long and three feet wide. It creates individual sealed packages through a four-step process. First, the machine is fed a sheet of plastic that is placed over a form. The plastic is heated and a vacuum pump draws the plastic into gaps in the form to create pouches. Meat is then put into the pouches. In the third step, a second sheet of plastic is heated and sealed to the first sheet by heat and pressure,

_____

[1] All further statutory references are to the Labor Code unless indicated.

and a cross-hatch or diamond pattern is embossed into the plastic from the sealing frame. The last step is the cutting of individual packages from the matrix of sealed containers. Some necessary pressure is applied to the plastic sheeting in the first and third steps. Neither the "forming station" nor the "sealing station" uses a knife or cutting tool.

Salgado contends that the imposition of the pattern into the plastic is a "stamping" operation. The purpose of the pattern is unclear. Modern Meat speculated the embossed cross-hatch pattern is decorative, improves grip on the package, or creates a better seal; Salgado's expert could only propose that it would allow quality assurance to confirm that there is a seal between the upper and lower sheets.

The packages are separated at the last station by means of a 16-inch serrated blade and a series of circular-shaped knives. Salgado was injured in this step of the process when she cleared a jam from the machine. Salgado suffered partial amputation of four fingers on her right hand. A safety guard that would likely have prevented her injury had been removed by a line supervisor.

The trial court granted summary judgment to Modern Meat, finding that the VA-43 was not a power press within the meaning of section 4558.

## DISCUSSION

We review de novo. Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment may only be granted when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated there is no triable issue as to any material fact. (*Artiglio v. Corning*

3

*Inc.* (1998) 18 Cal.4th 604, 612.) We first look to the pleadings and decide whether Modern Meat has presented facts to negate an essential element of, or to establish a defense to, each claim framed by the complaint. If so, we then determine whether Salgado has demonstrated the existence of a triable, material issue of fact. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 59.)

"As a general rule, where the conditions for compensation exist, benefits under the Workers' Compensation Act provide the exclusive remedy against an employer for injuries sustained in the course of employment. [Citations.] However, among the exceptions to this general rule is the 'power press' exception stated in section 4558 . . . ." (*Watters Associates v. Superior Court* (1990) 218 Cal.App.3d 1322, 1324, fn. omitted.) The purpose of that exception is to protect workers by discouraging employers from willfully removing or failing to install appropriate guards on power presses and thereby subjecting the workers to an unnecessarily high risk of extremely serious injury. (*Ceja v. J. R. Wood, Inc.* (1987) 196 Cal.App.3d 1372, 1377.)

Section 4558, subdivision (a)(4) defines a "power press" in the following terms: "'Power press' means any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." Title eight, section 4214, of the California Code of Regulations contains Article 55, subtitled "Power Operated Presses." That article applies only to those mechanically or hydraulically powered machines that shear, punch, form, or assemble metal or other material by means of tools or dies attached to slides, commonly referred to as power operated presses.

"The construction of the meaning of a statute is a matter of law which we consider anew. [Citations.] Nonetheless, we give deferential consideration to the trial court's opinion and ruling on the meaning of section 4558. [Citation.]" (*Bingham v. CTS Corp.* (1991) 231 Cal.App.3d 56, 62 [construing meaning of "point of operation guard" as used in section 4558].) Here, the trial court found that the VA-430 was not a power press. In announcing its decision, the trial court stated that the VA-430 was a "vacuum forming machine," noting the absence of a "powerful pressing or shaping motion which can cause a serious crushing injury." The trial court also found that the machine did not employ a die. There is little clear guidance in case law for the application of the power press exception.

The case of first impression defining a power press found that a hand-held circular saw did not qualify. (*Ceja v. J. R. Wood, Inc.*, *supra*, 196 Cal.App.3d at p. 1377.) The court held that the blade of the saw did not qualify as a "die" and that the legislature intended to reserve the power press exception to "large power tools," which "are run by large mechanical motors or hydraulically." (*Id*. at pp. 1376-1377.) A similar outcome was reached in *Graham v. Hopkins* (1993) 13 Cal.App.4th 1483. Cutting blades used to form wood into shapes injured the plaintiff, but the court found that blades do not qualify as a die because the shape of the blades does not determine the shape of the formed product. (*Id*. at p. 1488.) The earliest cases defining the power press exception did so negatively, because, as *Graham* noted, it is easier to determine what does not qualify "on a case by case basis than it is to develop an all-encompassing definition which will be appropriate in all cases." (*Ibid*.)

The California Supreme Court addressed the issue in *Rosales v. Depuy Ace Mechanical* (2000) 22 Cal.4th 279.  The plaintiff there was injured by a notching tool while working on a small aluminum knob at one of 12 tooling stations on a lathe. Endorsing *Graham*, our Supreme Court added the requirement that the die operate by "impact or pressure against the material" to be shaped, imparting some version of the shape of the die.  (*Id.* at p. 285.)  This is unlike a cutting blade that "can be directed to cut out any desired shape."  (*Ibid.*)  The Supreme Court found that the Legislature specifically intended the power press exception to protect workers using a device that "typically forms or cuts the material by use of high pressure or strong impact of the die against or through the material" because of the risk of crush injuries through the stamping process.  (*Id.* at p. 286.)  The Supreme Court held that it could not stretch the terms of the statute to cover the injury suffered.  (*Id.* at p. 287.)

Further, it did not matter whether some other part of the machine could operate as a power press if the plaintiff was not injured by that part of the machine.  "An injury caused by the operation of a machine that could operate as a power press, but was not so operating at the time of injury, would not be proximately caused by the employer's removal of, or failure to install, a point of operation guard on a power press.  As the evident intent of the statute was to provide a greater remedy for those workers injured in power press accidents, moreover, it would make no sense to interpret the statute as applying, as well, when the worker was operating, say, a power lathe, even if the same machine could, under other circumstances, have been used as a press.  That the undisputed facts demonstrate the V-notching tool is not a die was, therefore, sufficient

6

to support the grant of summary judgment to defendant." (*Rosales v. Depuy Ace Mechanical*, *supra*, 22 Cal 4th at pp. 287-288.) A machine with multiple functions or stations is classified as a power press only where it is operating as a power press. As noted elsewhere by the Supreme Court, "the power press exception to the workers' compensation exclusivity rule in section 4558 must be narrowly construed" because the legislation containing the exception was a "carefully crafted compromise among employer, employee and insurer groups . . . ." (*LaFiell Manufacturing Co. v. Superior Court (Watrous)* (2012) 55 Cal.4th 275, 286.) The exception does not apply to workers who are injured while operating other features of a power press machine.

Salgado's counsel argues that the trial court's ruling improperly included a requirement that the pressure applied by the machine must be powerful and that the finding that the VA-430 did not employ a die was factually incorrect. If there is a requirement that a "power press" apply powerful pressure, Salgado argues, it is Modern Meat's burden on summary judgment to establish the VA-430's lack of such pressure as an undisputed fact. Salgado argued below that the sealing station's cross-hatch impression is made by pressure, and also proposes on appeal that the sealing station utilizes pressure to hold the heated plastic against the pull of the vacuum pump. A die is employed to make the cross-hatch pattern, and the forming station, according to Salgado, also utilizes a die in the form of a nine-pocketed form through which the heated plastic is pulled. Salgado has presented evidence that the VA-430 employs both a die and pressure in its operation of those stations.

7

This Court must draw all reasonable inferences in favor of the party opposing summary judgment. Applying that standard, it may be possible to find that the forming and stamping stations of the VA-430 could meet the statutory definition of a power press, as there is evidence that the VA-430 utilizes a die and applies pressure to a product. However, answering the definitional question is neither necessary nor sufficient to resolve this appeal. Even assuming that stations of the VA-430 operate as a power press, Modern Meat has effective defenses to Salgado's claim, which operate as an absolute bar to recovery under the exemption.

First, although the cross-hatching or forming processes could inflict a serious crushing or pinching injury to an unprotected operator, the fact that a device can inflict a similar injury to those caused by a power press does not allow us to rewrite the statute to include the machine that caused Salgado's injury. (*McCoy v. Zahniser Graphics* (1995) 39 Cal.App.4th 107, 111 [printing press not a "power press"].) Modern Meat's expert testified in deposition that any such pressure was "not significant."[2] It is an unreasonable construction of the statute to apply the power press exemption to any machine where there is an incidental application of pressure; a machine that applies labels to wrappers or icing to cupcakes employs pressure, but to equate it to metal-stamping presses would make the exception swallow the whole of the workmen's

_____

[2] Salgado asserts that it is disputed whether the VA-430 applies significant pressure in its operation and that neither expert could "opine" on the amount of pressure applied. No such factual dispute exists. Salgado's expert declaration does not contradict Modern Meat's expert, saying only that Modern Meat's expert did not specify exactly how much pressure was exerted. Counsel's gainsaying does not create an issue of fact.

8

compensation system.  Although the VA-430 may have the characteristics of a power press, reason and precedent require us to give a narrow construction to the exception that places the VA-430 outside of its coverage.

Most significantly, Salgado was not injured by the station of the VA-430 where the die applied the crosshatching to the edges of the plastic panels, or where the package edges were sealed, which are the only parts that arguably operate as power presses. What inflicted Salgado's injuries was the separation station, where a series of circular blades cut shapes out of the formed matrix of packaged meats.  The circular blades were not part of a die and do not constitute a die under *Graham* and *Rosales*.  No pressure is applied to the product at that station.  The separation station is the last part of a 20-foot-long machine that performs four sequential stages in the creation of packages of meat. Plaintiff's counsel suggested at oral argument that we misread *Rosales*, and that it would hold that a machine with multiple stations qualifies as a power press at every station when the power press is running.  *Rosales* limited the power press exemption to the power press function of a multipurpose machine; the same reasoning applies to a multistation machine.  The part of the machine that inflicted injury was not operating as a power press, hence, under *Rosales*, *supra*, augmented recovery outside of the workmen's compensation system is not available to Salgado.

The trial court was correct in granting summary judgment, as Salgado was not working at a workstation that operated as a power press.  We affirm, although our reasoning differs with that expressed by the trial court.  (*Troche v. Daley* (1990) 217 Cal.App.3d 403, 407-408.)  It is true that nothing in the statute requires that a power

9

press apply more than a negligible amount of pressure, that the victim suffer a crush-type injury, or that the injury be inflicted by the die. The California Supreme Court, however, has instructed us to apply the power press exception sparingly because it upsets the carefully constructed balance of the workmen's compensation system. Following precedent, we must limit the power press exception to the actual operation of a power press. As regrettable as Salgado's industrial accident is, it is not one to which the Legislature extended special treatment.

### DISPOSITION

The judgment is affirmed. Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
J.


We concur:


McKINSTER
Acting P. J.


CODRINGTON
J.


10